# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 21, 2013

No. 12-30998

Lyle W. Cayce
Clerk

KEYBANK NATIONAL ASSOCIATION,

Plaintiff-Appellee

v.

PERKINS ROWE ASSOCIATES, L.L.C.; PERKINS ROWE ASSOCIATES II, L.L.C.; PERKINS ROWE BLOCK A CONDOMINIUMS, L.L.C.; JOSEPH T. SPINOSA,

Defendants-Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-497

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellee KeyBank National Association ("KeyBank") provided Defendants-Appellants, collectively referred to as "Perkins Rowe," with a loan for $170 million to construct a mixed-use development in Baton Rouge, Louisiana. When Perkins Rowe defaulted on its loan obligations, Keybank began this mortgage foreclosure suit. During the course of the litigation, the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30998

district court ordered that Perkins Rowe's counterclaims and defenses to the foreclosure be dismissed as a sanction for discovery abuses, and it subsequently granted KeyBank summary judgment. Perkins Rowe appeals both of those orders and also challenges the district court's diversity jurisdiction. We AFFIRM.

## I.

KeyBank provided the initial loan to Perkins Rowe in July 2006. Perkins Rowe signed a mortgage and promissory note in KeyBank's favor for the full amount of the loan, and individual defendant Joseph "Tommy" Spinosa signed a personal guaranty. Pursuant to the loan agreement, KeyBank sold and assigned portions of the loan to eight other banks, none of whom are parties in this suit, but it retained a $35 million interest in the loan. Although Perkins Rowe signed separate promissory notes in favor of each of the other banks, the loan agreement contemplated that KeyBank would act as the agent for all of the lenders and maintain authority to pursue default remedies as if it were the holder of all the loans. After Perkins Rowe defaulted on its obligations in 2008, KeyBank filed the instant suit to foreclose on the loan and to enforce the guaranty.

## II.

On appeal, Perkins Rowe argues first that the district court lacked diversity jurisdiction. Although KeyBank, a citizen of Ohio, is diverse from Perkins Rowe, a citizen of Louisiana, Perkins Rowe contends that the court must also consider the citizenship of the other non-party banks with interests in the loan. Because one of those lenders, Bank of New Orleans, is also a Louisiana citizen, Perkins Rowe asserts that complete diversity is lacking and there is no federal jurisdiction.

We review de novo a determination of federal diversity jurisdiction. *McKee v. Kansas City S. Ry. Co.,* 358 F.3d 329, 333 (5th Cir. 2004). Federal

No. 12-30998

jurisdiction extends to controversies between "citizens of different States." 28 U.S.C. § 1332(a)(1). This statutory provision "require[s] complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct. 606, 613 (2005). When considering whether there is diversity jurisdiction, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S. Ct. 1779, 1782 (1980).

Perkins Rowe contends that because the other lending banks have an interest in the loan they are real parties to the controversy and must be considered for diversity purposes. However, "[t]he 'real party to the controversy' test does not require a federal court to consider the citizenship of non-parties who have an interest in the litigation or might be affected by the judgment." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 865 n.10 (5th Cir. 2003). "The 'real party to the controversy' test requires consideration of the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another." *Id.* (citing *Navarro Sav. Ass'n*, 446 U.S. at 458, 100 S. Ct at 1779). That is not the case here.

KeyBank is the only party plaintiff in this case and is authorized under the loan agreement to pursue default remedies, which will then bind the other lenders. The fact that the other banks have an interest in the outcome of the foreclosure does not affect the diversity analysis because KeyBank has a real interest in the suit, and it is not acting solely on behalf of others for the purpose of creating diversity jurisdiction. *See id.* at 863; *cf. Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) (holding there was no diversity jurisdiction where the named plaintiff was an agent of several unnamed parties because the plaintiff was "a mere conduit for a remedy owing to others, advancing no specific interests of its own").

3

No. 12-30998

We are unpersuaded by Perkins Rowe's reliance on the Supreme Court's decision in *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, 110 S. Ct. 1015, 1021 (1990), which held that when a single unincorporated association, including a limited partnership, is a party to a suit the federal court must consider the citizenship of all the association's members, i.e. not only the general partner but also all the limited partners. Perkins Rowe contends that KeyBank's role in the financing arrangement is akin to that of a general partner. However, unlike *Carden*, there is no artificial entity or association before the court whose members' citizenship may be considered. *See Carden*, 494 U.S. at 187 n.1, 110 S. Ct. at 1017 n.1 (noting that Court there was deciding the question of "how the citizenship of [a] single artificial entity is to be determined"); *see also BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 893–95 (8th Cir. 2013) (holding under similar circumstances that there was diversity jurisdiction in a suit by a bank against the borrower where the bank had sold undivided interests in the loan to other non-party banks, and the borrower had not shown that the non-parties were necessary parties to the suit under Rule 19). Here, there is only one opposing party, KeyBank, and that party is diverse from Perkins Rowe.

Whether the other non-party banks in this case are necessary parties whose joinder would defeat diversity is a much different question. *See Lincoln Prop.*, 546 U.S. at 90, 126 S. Ct. at 614 ("Rule 19 provides for the joinder of parties who should or must take part in the litigation to achieve a just adjudication." (internal quotation marks, alterations, and citation omitted)); *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1607 (noting that under Rule 19(b) if a party should but cannot be joined because joinder would defeat subject matter jurisdiction, the district court must determine whether "in equity and good conscious" the case should proceed or be dismissed). Although the district court determined that the other banks were

4

No. 12-30998

not necessary parties under Rule 19, Perkins Rowe has not briefed that issue, and we do not consider it. *See*, *e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (holding that an appellant abandons issues not raised and argued in its initial brief on appeal).

We hold that because KeyBank is the only party plaintiff and has a real and substantial interest in the suit, and there is no showing that KeyBank is a mere nominal party used to manufacture federal jurisdiction, its citizenship is the only proper consideration. There is no dispute that KeyBank is diverse from the defendant. The district court therefore had subject matter jurisdiction.

## III.

Perkins Rowe next challenges the district court's order dismissing its defenses and counterclaims as a sanction for discovery abuses, claiming that there was no willful or contumacious conduct on its part. We review the district court's imposition of sanctions for an abuse of discretion. *See Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76 (5th Cir. 2011); *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993) ("[T]he question we address is not whether this Court, in its own judgment and as an original matter, would have imposed any of these sanctions. Rather, we only ask whether the district court abused its discretion in doing so."). We review the district court's factual findings underlying its sanctions order for clear error. *Brown*, 664 F.3d at 77.

District courts may impose sanctions on a party who fails to obey a discovery order, including striking pleadings or dismissing an action in whole or in part. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii) & (v). The sanction of dismissal is "authorized only when the failure to comply with the court's order results from willfulness or bad faith . . . [and] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998) (internal quotation marks and citation omitted). "The reviewing court may also consider whether the discovery violation

5

prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation." *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003).

In the instant case, we need not recite in great detail the contentious history and numerous discovery issues, which are well known to the parties. Suffice it to say that there were multiple discovery disputes, resulting in numerous motions to compel filed by both sides and requiring in our view inordinate intervention by the magistrate judge and the district court, who together issued some fifteen orders related to discovery. Briefly, the history in this case included the following motions and findings by the court.

First, Perkins Rowe sought to depose three KeyBank witnesses on the eve of expiration of the first discovery deadline by seeking information that the magistrate judge found was irrelevant. The magistrate judge also found that Perkins Rowe gave inadequate notice of the depositions, improperly served the notices, and unjustifiably sought an extension of the discovery deadlines. The magistrate judge quashed the depositions and assessed costs against Perkins Rowe.

Perkins Rowe subsequently produced a redacted expert report, which the magistrate judge found was improper. The court held that Perkins Rowe's production of the report was "not substantially justified," "not harmless," and lacked a "good faith basis for the redactions." The court again assessed costs against Perkins Rowe on KeyBank's motion to strike.

Perkins Rowe next improperly sought to quash subpoenas issued by KeyBank for documents from third-parties. The magistrate judge found that Defendant Spinosa had ducked service of the notices and that the defendants were attempting to delay the case. Then, with respect to a subsequent motion to compel filed by Perkins Rowe, the magistrate judge found that the motion was not substantially justified and that Perkins Rowe failed in good faith to seek

resolution of the matter with KeyBank prior to seeking court intervention. The court once again assessed costs against Perkins Rowe.

Next, the magistrate judge's February 25, 2011 order found that Perkins Rowe's responses to KeyBank's discovery requests had asserted "blanket" objections that were "meritless," "legally unsupported," and "baseless." The court required Perkins Rowe to re-serve complete answers. It also ordered that "no objections" based on attorney-client privilege would be allowed unless previously asserted. For the fourth time, the court ordered costs as a sanction. In reviewing this order, the district court held that Perkins Rowe had consistently "stonewalled" KeyBank in the discovery process. Despite these findings by the court, Perkins Rowe violated the February 25 order by continuing to assert a privilege objection and by withholding approximately fifteen hundred documents from its production, prompting KeyBank to file a motion for contempt.

It was against this backdrop that the district court ordered Perkins Rowe's defenses and counterclaims dismissed. We have carefully reviewed the voluminous record and conclude that the district court did not abuse its discretion. The court's finding that the defendants repeatedly delayed and thwarted the discovery process is not clearly erroneous.

Although Perkins Rowe contends that its conduct was not willful and that lesser sanctions should have been considered by the district court before dismissal, we conclude that the continuing nature of Perkins Rowe's discovery conduct supported the willfulness finding. *See, e.g.*, *Bell v. Texaco, Inc.*, 493 F. App'x 587, 593 (5th Cir. 2012) (holding that willfulness may be found by repeated failures to comply with discovery orders); *see also Smith*, 145 F.3d at 344 (holding that in finding willfulness or bad faith, the district court "was entitled to rely on its complete understanding of the parties' motivations"). Furthermore, because the district court had imposed costs on four prior

occasions, it was not required to impose lesser sanctions before ordering dismissal. *See Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir. 1984) ("When lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice."); *Bell*, 493 F. App'x at 593 (holding that a Rule 37 dismissal was not erroneous where the district court had ordered monetary reimbursement prior to dismissing the case). In light of its findings that Perkins Rowe had filed numerous meritless or unsupported motions and objections and then violated a court order, which we do not find to be clearly erroneous, the district court's sanction order was not an abuse of discretion.

Perkins Rowe contends, however, that it did not receive adequate warning that the district court might dismiss its defenses and counterclaims as a sanction because the district court never expressly mentioned dismissal as a possible outcome. KeyBank's motion for contempt, however, expressly asked that the defenses and counterclaims be dismissed. At a subsequent status conference, the district judge specifically discussed the imposition of sanctions, and even mentioned possibly placing Spinosa in jail. Moreover, Perkins Rowe had already been sanctioned on four occasions with the lesser penalty of costs. Under these circumstances, we conclude that Perkins Rowe had sufficient notice that severe sanctions could be forthcoming, including the dismissal of its defenses and counterclaims, for continued discovery abuses, and its claim of lack of notice is without merit.

Perkins Rowe's claim that the dismissal sanction was a violation of due process is similarly without merit. A district court's Rule 37(b)(2) sanction order generally must meet two standards: "[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107 (1982). Perkins Rowe characterizes the sanction order as unjust and resulting solely from the

No. 12-30998

failure to obey the magistrate judge's February 25 order. But the district court dismissed the counterclaims and defenses because of Perkins Rowe's history and pattern of dilatory tactics, filing frivolous discovery motions and meritless objections, and then, as a final straw, failing to follow the clear directive of the February 25 order. We conclude that the district court properly exercised its discretion under Rule 37, and we find no due process violation.

IV.

Finally, Perkins Rowe argues that the district court erroneously granted KeyBank summary judgment. It contends that even after the dismissal of its defenses and counterclaims, factual issues remained. We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *ACE Am. Ins. Co. v. M-I, L.L.C.*, 699 F.3d 826, 830 (5th Cir. 2012).

Perkins Rowe's brief is largely conclusory, and the only real dispute that we discern concerns the amount of the debt owed on the loan. Perkins Rowe's argument essentially comes down to its assertion that it was entitled to a lower interest rate than the rate used by KeyBank and that KeyBank failed to account adequately for revenue and apply the net positive cash flow from the property to the debt. We are unpersuaded. A comparison of the expert affidavits shows no dispute concerning the principal amount due on the loan or the late charges applied to the debt but does show a difference as to the interest rate to be applied. Perkins Rowe contends that because it met certain equity benchmarks, the loan agreement allowed for a reduction in the interest rate. The district court correctly concluded, however, that the reduction was permitted only if Perkins Rowe did not default. Perkins Rowe's default necessarily meant that it was not entitled to the reduction. Thus, there is no genuine issue of fact as to the proper interest rate.

Perkins Rowe also fails to show an issue of fact with respect to the net cash flow. The evidence showed that revenue generated from the project was

9

maintained in a reserve holding account and made available to the Keeper to cover costs and expenses for the operation, maintenance, and preservation of the property. As noted by the district court, this procedure was consistent with the terms of the loan agreement. To the extent Perkins Rowe argues that the revenue generated from the project should have been applied to the debt, or that KeyBank or the Keeper failed to account for the revenue, its argument is unavailing because KeyBank was not contractually required to apply the funds to the debt first.

Perkins Rowe also argues that the district court erroneously denied it the opportunity for further discovery on the amount of the debt by deposing various witnesses. Its four-sentence argument is inadequately briefed and improperly attempts to incorporate by reference an affidavit filed in the district court. *See*, *e.g.*, *Perillo v. Johnson*, 79 F.3d 441, 443 n.1 (5th Cir. 1996) (holding that appellant may not incorporate by reference arguments made in district court pleadings). We conclude that the district court did not err in granting KeyBank summary judgment.

AFFIRMED.